IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, | § | NO. 1:24-CV-377-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| DORMONT MANUFACTURING COMPANY, | § | |
| | § | |
| Defendant. | § | |

ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS

The matter before the Court is Defendant Dormant Manufacturing Company's ("Defendant" or "Dormont") Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint. (Dkt. # 7.) After careful consideration of the motion, the response in opposition, and the reply in support, the Court, for the reasons that follow, **GRANTS IN PART** and **DENIES IN PART** the motion.

BACKGROUND

Plaintiff American Economy Insurance Company ("Plaintiff" or "AEIC") provides insurance for damage to real and personal property. (Dkt. # 1 at 3.) AEIC issued an insurance policy to Kyle and Ashley Green (the "Insureds") covering their home built in 2021, including their personal property and living

expenses (the "Property"). (Id. at 3.) In early 2021, Insureds purchased a washer and dryer from Home Depot. (Id.) Plaintiff alleges the dryer was a liquid petroleum ("LP") gas dryer and was connected to the gas system in the home using a "short flexible corrugated stainless steel tubing appliance connector" ("Appliance Connector") which was manufactured by Dormont. (Id.) Plaintiff contends that Dormont manufactures, markets, distributes, sells, and supplies flexible appliance connectors in the United States. (Id. at 2.) The complaint states the Appliance Connector was installed at the Property according to the manufacturer's specifications at the time it was sold, and its sole purpose was to safely transport LP gas to Insured's LP gas dryer. (Id.)

On April 25, 2022, a fire destroyed Insured's property (the "Fire") approximately ten months after its construction. (Dkt. # 1 at 5.) According to Plaintiff, the lightning strike report for April 25, 2022, indicated a strike occurred at 12:39 p.m. and within .1 kilometers of Insured's home. (Id.) Plaintiff contends Insured's metal roof suffered a direct lightning strike that energized the rigid exhaust dryer duct. (Id.) The current is alleged to have traveled through the duct and arced to the adjacent Dormont Appliance Connector. (Id.) Plaintiff asserts that the current created a hole in the wall of the Appliance Connector and ignited the escaping gas. (Id.) According to Plaintiff, the Dormont Appliance Connector failed from an electrical current of less than three coulombs. (Id.) As a

result of the Fire, the Insureds made a claim to AEIC pursuant to their insurance policy, and AEIC contends that it has and will make payments to and on behalf of its Insureds in an amount exceeding $1,000,000.00. (Id. at 6.)

On April 9, 2024, the damage and subsequent subrogation led AEIC to file suit in this Court against Dormont. (Dkt. # 1.) AEIC's complaint alleges claims sounding in strict products liability, negligence, breach of implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose. (Dkt. # 1 at 7, 11, 12, 13.) On June 10, 2024, Dormont filed the instant motion to dismiss AEIC's claims. (Dkt. # 7.) On June 24, 2024, AEIC filed a response in opposition. (Dkt. # 8.) On July 1, 2024, Dormont filed its reply. (Dkt. # 9.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" U.S. ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

Dormont moves to dismiss AEIC's original complaint for design defect, marketing defect, unreasonably dangerous product, negligence, breach of implied warranty of merchantability, and breach of the implied warranty of fitness for a particular purpose.[1] (Dkt. # 7.)

### I. Strict Products Liability

In Texas, a plaintiff may bring a products liability case under three possible methods of recovery: "(1) strict liability under [Restatement (Second) of Torts] § 402A, (2) breach of warranty under the U.C.C., and (3) negligence." Cofresi v. Medtronic, Inc., 450 F. Supp. 3d 759, 765 (W.D. Tex. 2020) (quoting Syrie v. Knoll Int'l, 748 F.2d 304, 306 (5th Cir. 1984) (citation omitted); see

[1] Dormont also moves to dismiss AEIC's claim for manufacturing defect to the extent one is alleged. (Dkt. # 7 at 10.) AEIC does not address this claim in its response; in any case, the Court finds that no such claim is properly raised in AEIC's pleadings.

also Lashley v. Pfizer, Inc., 750 F.3d 470, 477 (5th Cir. 2014) (same); Tex. Civ. Prac. & Rem. Code Ann. § 82.001(2)). AEIC has alleged a strict products liability claim. (Dkt. # 1 at 7.) "To make out a strict liability cause of action, a party must establish that: (1) a product is defective; (2) the defect rendered the product unreasonably dangerous; (3) the product reached the consumer without substantial change in its condition from the time of original sale; and (4) the defective product was the producing cause of the injury to the user." Syrie, 748 F.2d at 306. "A product can be defective due to defective design, manufacture, or marketing." Lucas v. Texas Indus., Inc., 696 S.W.2d 372, 377 (Tex. 1984).

AEIC alleges that Dormont's Appliance Connector had both marketing and design defects and was unreasonably dangerous. (Dkt. # 1 at 7.) AEIC argues Dormont's design was defective "due to its inability to withstand, safely conduct and dissipate all electrical currents which were likely to be imposed upon it." (Dkt. # 1 at 7.) It alleges Dormont knew the Appliance Connector's metal walls were vulnerable to electricity from a direct lightning strike and that there was an unreasonable risk of harm from using the product. (Id. at 7–8.) AEIC alleges Dormont should have known: (1) there was an unreasonable risk of harm in using the product; (2) the design defect could result in fire; (3) there were safer alternative designs; and (4) the designs were "economically and technologically feasible" when the Appliance Connector was installed. (Id. at 8.)

Additionally, AEIC asserts a marketing defect caused by Dormont's failure to warn purchasers that its product was vulnerable to lightning strikes and to recall it. (Id.) AEIC also alleges Dormont had actual notice of residential fires due to its product but failed to warn customers. (Id. at 9.) Due to the alleged design and marketing defects, AEIC also claims this rendered the product unreasonably dangerous, and the defects were a "producing and proximate cause of the Fire and Plaintiff's damages." (Id. at 10.)

A. Design Defect

Dormont first argues that AEIC's design defect claim fails to properly plead a claim for relief because the product AEIC contends was the nexus of their injury—Dormont's manufacture of an "Appliance Connector"—is a wholly different product from the one AEIC proffers as a safer alternative design.[2] (Dkt. # 7 at 6.) Dormont states, "in essence Plaintiff's Complaint confuses the Dormont

[2] Dormont requests the Court to take judicial notice of its exhibits attached to its motion to dismiss. (Dkt. # 7 at 3–4.) The Fifth Circuit approves of "[d]ocuments that a defendant attaches to a motion to dismiss" and "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498–99 (5th Cir. 2000). AEIC only disputes whether an article attached to the motion should be considered because it was not referenced in the complaint. (Dkt. # 8 at 5.) Indeed, Dormont concedes that "the court's reliance and/or use of the [article] is unnecessary to rule." (Dkt. # 9 at 3.) In any case, the Court will only take notice of the article as it pertains to Dormont's reliance on the applicable code and design standards. (See Dkt. # 7 at 2.)

gas connector with a different product, known as [corrugated stainless steel tubing ("CSST")] fuel gas piping, alleging that the two are one and the same, when the products have different uses and different governing Code provisions." (Dkt. # 7 at 4). AEIC replies that "the tubing for both products are made of the same material, have similar thickness, and are both are [sic] used to transport liquid petroleum gas." (Dkt. # 8 at 3.)

To prevail in a design defect case, a plaintiff must show that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was the producing cause of the injury for which the plaintiff seeks recovery." Cofresi at 765-766 (quoting Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 311 (Tex. 2009) (citing Texas Civ. Prac. & Rem. Code § 82.005(a)).

a. Unreasonably Dangerous

"In determining whether a product is defectively designed, the jury must conclude that the product is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use." Emerson Elec. Co. v. Johnson, 627 S.W.3d 197, 205 (Tex. 2021) (quoting Am. Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 432 (Tex. 1997)). The determinative factors ("Grinnell factors") include: "(1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;

(2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive; (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs; (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (5) the expectations of the ordinary consumer." Id.

The first Grinnell factor involves weighing the product's utility to users and the public "against the gravity and likelihood of injury from its use." Id. Appliance connectors greatly benefit users, considering that they are necessary to "facilitate the safe transmission of LP gas." (Dkt. # 1 at 3.) Despite this utility, AEIC has alleged sufficient facts at this stage of the proceedings to show the danger of harm from damage due to lightning strikes outweighs the utility of the appliance connector in its current form.

AEIC also satisfies factor two by proffering the FlashShield+ as a safer alternative version to the Appliance Connector. (Dkt. # 1 at 4.) AEIC alleges that the FlashShield+ corrugated stainless-steel tubing is covered by a protective jacket, which can prevent damage from lightning-related currents exceeding 80 coulombs. (Id.) According to AEIC, the products are similar as "the tubing for both products are made of the same material, have similar thickness, and are both

used to transport liquid petroleum gas." (Dkt. # 8 at 3.) AEIC has pled sufficient facts showing "the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive" from the similarities described between the alleged Dormont Appliance Connector and the Flashshield+ CSST. See Johnson, 627 S.W.3d at 205. Furthermore, despite Dormont's contentions that the products are dissimilar, at this stage of the proceedings, a heightened showing is not required as this would prevent plaintiffs without an engineering or technical background from bringing a design defect claim. See Burch v. KLS Martin, LP, No. 7:21-CV-00002-M-BP, 2021 WL 5868329, at *5 (N.D. Tex. Nov. 18, 2021), report and recommendation adopted, No. 7:21-CV-00002-M-BP, 2021 WL 5866646 (N.D. Tex. Dec. 10, 2021)). Dormont may reraise this argument at a later stage of the proceedings after sufficient time for discovery. The Supreme Court has noted that "…a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (citation omitted). While Dormont might prevail at trial, the standard proffered is not warranted at this stage.

Additionally, AEIC satisfies the third Grinnell factor by alleging "Defendant Dormont was aware that these alternative designs were economically and technologically feasible at the time the appliance connector was installed in the Property and at the time it left Defendant Dormont's control by the application of

existing or reasonably scientific knowledge." (Dkt. # 1 at 8.) AEIC has alleged that since the 1990s, "it became apparent that CSST products needed to be redesigned so as to provide greater resistance to potential lightening insult." (Id. at 4.) And, AEIC satisfies the fourth Grinnell factor by alleging the design defect "rendered Defendant Dormont's Appliance Connector unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer with the knowledge common to the community as to its characteristics." (Dkt # 1 at 9.) Finally, AEIC satisfies the final factor by alleging that the "design and manufacture of the Appliance Connector did not meet the reasonable expectations of the ordinary consumer as to safety." (Id.) AEIC has pled sufficient facts at this stage that the product is unreasonably dangerous, thus satisfying the first prong of the requirement to prove a design defect.

b. Safer Alternative Design

A safer alternative design is "a product design other than the one actually used that in reasonable probability (1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and (2) was economically and technologically feasible at the time the product left the control of the manufacturer or seller by the application of existing or reasonably achievable

scientific knowledge." Cofresi 450 F. Supp. 3d at 766 (quoting Tex. Civ. Prac. & Rem. Code § 85.005(b)).

AEIC proffers the FlashShield+ as a "substantially similar alternative that could withstand appropriate coulombs of energy that the appliance connector here failed to withstand." (Dkt. # 8 at 11.) As discussed, AEIC argues this product is substantially similar to the Dormont Appliance Connector, as both products are made of corrugated stainless-steel tubing, have similar thicknesses, and supply liquid petroleum gas to appliances. (Id. at 3.) AEIC asserts that "Defendant Dormont was aware that these alternative designs were economically and technologically feasible at the time the appliance connector was installed in the Property and at the time it left Defendant Dormont's control by the application of existing or reasonably scientific knowledge." (Dkt. # 1 at 8.)

In response, Dormont contends again there are design differences that make these products "substantially different." (Dkt. # 7 at 9.) Dormont argues that "[a]mong Plaintiff's many procedural shortcomings is its failure to allege any facts showing this particular design was technologically and economically feasible for *gas appliance connectors*—not just CSST—at the time Dormont manufactured the gas appliance connector and its failure to specify the materials or construction that compose [its] alternative designs." (Id. at 9 (emphasis in original) (internal quotation marks omitted.)

Dormont again heightens the pleadings at this stage of the proceedings wherein the Court must take Plaintiff's pleadings as true, and any technical differences are more appropriate for a jury to weigh via expert testimony, or at a minimum in a motion for summary judgment. See Twombly, 550 U.S. at 555, Burch, WL 5868329, at *5. AEIC has thus satisfied the second prong required for a design defect.

c. Producing Cause of Injury

AEIC has adequately alleged that Dormont's Appliance Connector was "the producing cause for which plaintiffs seek recovery," as it failed due to an electrical current from a lightning strike at a "current of less than three coulombs." (Dkt. # 1 at 6.) And, AEIC has posited that "the average energy in a lightning strike in the United States is between 5 and 25 coulombs of energy." (Id. at 4.) AEIC states the failure of the Dormont Appliance Connector ignited the escaping gas and created the fire that is the basis of this claim. (Id. at 5.) AEIC has thus satisfied the third prong required for a design defect and therefore sufficiently pled this claim. The Court will therefore deny Dormont's motion to dismiss AEIC's design defect claim.

B. Marketing Defect

AEIC next asserts that Dormont marketed a defective product by failing to warn purchasers of its Appliance Connector's vulnerability of failure when exposed to "foreseeable electrical forces." (Dkt. # 1 at 8.) AEIC also alleges that Dormont knew or should have known of an unreasonable risk of harm from the "intended and reasonably foreseeable use of its Appliance Connector," and that it failed to adequately warn of the risks, and that Dormont "had actual notice of residential fires attributed to its Appliance Connector's failure. (Id. at 8–9.)

To succeed on a marketing defect claim, a plaintiff must show: "(1) a risk of harm is inherent in the product or may arise from the intended or reasonably anticipated use of the product; (2) the product supplier actually knew or should have reasonably foreseen the risk of harm at the time the product was marketed; (3) the product possessed a marketing defect; (4) the absence of the warning or instructions rendered the product unreasonably dangerous to the ultimate user of the product; and (5) the failure to warn or instruct constituted a causative nexus in the product user's injury." Cofresi v. Medtronic, 450 F.Supp.3d 759, 767 (W.D. Tex. 2020) (quoting DeGrate v. Executive Imprints, Inc., 261 S.W.3d 402, 411 (Tex. App. 2008)).

Upon consideration of the factors, the Court finds that AEIC has alleged sufficient facts to support a marketing defect claim. The complaint alleges that "the Appliance Connector was vulnerable to failure when exposed to foreseeable electrical forces, such as direct and indirect lightning strikes, and that there was a substantial risk of fire or similar peril presented by the normal use of its product." (Dkt # 1 at 8). AEIC also alleges sufficient facts that the product supplier should have known there was a risk of harm from the appliance connector since "one in 200 homes located in the United States will be struck by lightning in any given year, combined with the facts alleged regarding the average amount of coulombs generated by a lightning strike." (Id. at 4.)

AEIC's allegations are also supported by the claim that Dormont's Appliance Connector failed as a result of exposure to an electrical current of fewer than three coulombs when the average lightning strike produces coulombs of five to twenty-five. (Dkt # 1 at 4.) AEIC has also alleged that "[i]nformation about the potentially harmful effect of lightning on [CSST] used to supply natural and LP gas has been known and available to [] Dormont since the 1990s." (Id. at 4.) Furthermore, AEIC contends that the Appliance Connector had a marketing defect, and that Dormont failed to warn of the risk of lightning on CSST and how to avoid such danger. (Id. at 8–9.) AEIC asserts that such failure to warn attributed to the damage at Insureds' home. (Id. at 9.) Accordingly, upon review, the Court finds

that AEIC has sufficiently alleged a marketing defect claim, and the Court will deny Dormont's motion to dismiss this claim.

II. Negligence

AEIC alleges a claim for negligence. (Dkt. # 1 at 11.) Dormont moves to dismiss this claim on the basis that AEIC fails to properly allege facts in support of a negligence action. (Dkt. # 7 at 12.) Additionally, Dormont asserts that the claim should be dismissed because it only concerns allegations of a defective product, which is subsumed in AEIC's product liability theories. (Id. at 13.)

"A negligence cause of action requires a different showing from a strict liability claim, even when the action is against the manufacturer." Syrie v. Knoll Intern., 748 F.2d 304, 307 (5th Cir. 1984) (citing Gonzales v. Caterpillar Tractor Co., 571 S.W.2d 867 (Tex. 1978)). The Texas Supreme Court has explained the distinction between a strict liability claim and negligence claim in the context of product liability:

> The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

Gonzales, 571 S.W.2d at 871.

For a negligence claim against a manufacturer, a plaintiff must show "(1) the manufacturer owed a duty to the plaintiff; (2) the manufacturer breached that duty; (3) the plaintiff was injured; and (4) the breach of duty was a proximate cause of the injury." Syrie, 748 F.2d at 307. And "a person who manufactures or supplies a product owes a duty of reasonable care to users of the product and to those in the foreseeable zone of danger." Id. "These suppliers must exercise reasonable care to prevent physical harm that can reasonably be foreseen to result from the use of the product for its intended purpose, and they must take reasonable care to discover the dangerous propensities of the product and to warn those who might be endangered by it." Id.

The Court finds that AEIC has properly alleged a negligence claim separate from a product liability claim. AEIC's complaint alleges that Dormont owed the Insureds (and thus AEIC) the duty to use reasonable care in the "design, manufacture, development, production and marketing of the Appliance Connector so that it would reach its intended user in a non-defective, safe condition, thereby preventing the exposure of an unreasonable risk of harm." (Dkt. # 1 at 11.) Additionally, AEIC contends that Dormont breached that duty in one of the following ways: (1) "[f]ailing to properly develop the Appliance Connector with an adequate exterior skin and coatings so that the product was able to tolerate normal and expected conditions in the environment where it is installed"; (2) "[f]ailing to

design its Appliance Connector with a wall thickness that is capable of withstanding anticipated and foreseeable conditions and exposure to foreseeable electrical forces, such as fault current and lightning current, before distributing the product to the public"; (3) "[f]ailing to properly inspect and test the design and marketing of its product before distributing the product to the public; d. Failing to warn the Plaintiff's Insureds of the substantial risk of fire or similar peril presented by the normal use of its product"; (4) "[f]ailing to provide a product that was capable of withstanding damage to its integrity resulting from expected and typical electrical storms and lightning common to the area"; (5) "[f]ailing and/or omitting to do those things necessary to avoid an unreasonable risk of harm to Plaintiff's Insureds"; and (6) "[f]ailing to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices." (Id. at 11–12.) Finally, AEIC alleges that as a "direct and proximate result" of these negligent actions, "Plaintiffs' Insureds sustained damage to real and personal property in an amount in excess of 1,000,000.00, exclusive of interest and costs, for which [] Dormont is legally liable." (Id. at 12.) Thus, AEIC has sufficiently alleged a negligence claim separate from its products liability claims, and the Court will deny Dormont's motion to dismiss this claim.

III. Breach of the Implied Warranty of Merchantability

Dormont moves to dismiss AEIC's claim for breach of the implied warranty of merchantability on the basis that AEIC has failed to notify Dormont of any alleged breach. (Dkt. # 7 at 13.) Additionally, Dormont contends that AEIC has failed to allege sufficient facts in support of its claim. (Id. at 14.)

In Texas, "to establish a claim for breach of the warranty of merchantability, a plaintiff must show: (1) that the merchant leased or sold a product to plaintiff; (2) that the product was unmerchantable, that is, unfit for its ordinary purpose; (3) that the plaintiff notified the defendant of the breach; and (4) that the plaintiff suffered injury." AIG Eur., Ltd. v. Caterpillar, Inc., 831 F. App'x 111, 116–17 (5th Cir. 2020) (quoting Equistar Chems., L.P. v. Dresser-Rand Co., 240 S.W.3d 864, 867 (Tex. 2007)). Merchantable goods "must be . . . fit for the ordinary purposes for which such goods are used." Tex. Bus. & Com. Code Ann. § 2.314(b)(3).

Texas law requires that a plaintiff "within a reasonable time after he discovers or should have discovered any breach [of warranty], notify the seller or be barred from any remedy." Tex. Bus. & Com. Code § 2.607(c)(1). Texas courts have applied this notice requirement to cases involving allegations of breach of warranty even against remote manufacturers. See U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 199 (Tex. App.–Houston [1st Dist.] 2003, pet. denied).

This pre-suit notice requirement applies to claims of both express and implied warranty breaches. Id. at 200—201. Texas law places the burden of alleging notice on the plaintiff. See id. at 200. This notice requirement is better described as a condition precedent for a plaintiff's cause of action. See id. (internal citations omitted). Further, requiring the notification requirement before litigation "is consistent with § 2.607's purpose to 'inform[] the seller that the transaction is claimed to involve a breach, and thus open[] the way for normal settlement through negotiation.'" McKay v. Novartis Pharm. Corp., 751 F.3d 694, 706 (5th Cir. 2014) (citing Tex. Bus. & Com. Code § 2.607 cmt. 4.).

Here, AEIC has failed to plead any facts that it gave pre-suit notice to Dormont, and there are no allegations that Dormont knew, could reasonably have known, or should have known about the specific circumstances surrounding the damages Insureds suffered after lightning struck their home. Given this, the Court finds that AEIC has failed to state a claim for breach of the implied warranty of merchantability and this claim will be dismissed without prejudice.

IV. Breach of Implied Warranty of Fitness for a Particular Purpose

Dormont also moves to dismiss AEIC's claim for breach of the implied warranty of fitness for a particular purpose. (Dkt. # 7 at 14.) Dormont asserts that AEIC conflates the implied warranty of merchantability with the implied warranty of fitness for a particular purpose, and that AEIC fails to allege

that the Insureds purchased the Appliance Connector for some out-of-the-ordinary and intended purpose of providing gas to the dryer. (Id. at 15.)

To prevail on a claim for breach of the implied warranty of fitness for a particular purpose, a plaintiff must prove: (1) the seller had reason to know any particular purpose for which the goods were required at the time of contracting; (2) the buyer actually and justifiably relied on the seller's skill or judgment to select or furnish suitable goods; (3) the buyer notified the seller of the breach within a reasonable time after the buyer discovered or should have discovered any breach of warranty; (4) the buyer suffered injury; and (5) the seller's breach caused the buyer's injury. Omni USA, Inc. v. Parker–Hannifin Corp., 964 F.Supp.2d 805, 817 (S.D. Tex. 2013). The warranty does not arise unless the particular purpose differs from the usual and ordinary use of the goods. Coghlan v. Aquasport Marine Corp., 73 F.Supp.2d 769, 774 (S.D. Tex. 1999) (citing Texas cases), aff'd sub nom. Coghlan v. Wellcraft Marine Corp., 240 F.3d 449 (5th Cir. 2001). Use of a product according to its function and design is "ordinary use," even if the product is designed for an unusual purpose. ASAI v. Vanco Insulation Abatement, Inc., 932 S.W.2d 118, 122 (Tex. App.-El Paso 1996, no writ).

Like its claim for breach of the implied warranty of merchantability, AEIC has failed to plead facts that it gave pre-suit notice to Dormont. Additionally, AEIC fails to allege any facts that the Insureds purchased the

Appliance Connector for a "particular purpose" as Texas law defines that term. Instead, AEIC has only alleged that Insureds purchased the Appliance Connector for its intended purpose—providing gas to a dryer—and not for some other particular purpose to support a breach of the implied warranty of fitness for a particular purpose. Accordingly, the Court will dismiss this claim without prejudice.

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Dormont's Rule 12(b)(6) Motion to Dismiss Plaintiff's Original Complaint (Dkt. # 7). The motion is **GRANTED** as to Plaintiff's claims for breach of implied warranty of merchantability and breach of the implied warranty of fitness for a particular purpose and these claims are **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED** as to the remaining claims.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, December 16, 2024.

David Alan Ezra
Senior United States District Judge